UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALAN JEROME HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:05 CV 773 |
| | ) |
| CORRECTIONAL MEDICAL SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Alan Jerome Hughes, a *pro se* prisoner, submitted an amended complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color

> of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Hughes alleges that he has been denied medical treatment. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d at 1373.

Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have

> known that the plaintiff was at serious risk of being harmed and decided
> not to do anything to prevent that harm from occurring even though he
> could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and
> it is not enough that he or she should have known of a risk. Instead,
> deliberate indifference requires evidence that an official actually knew of a
> substantial risk of serious harm and consciously disregarded it
> nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).

Mr. Hughes alleges that several defendants were rude to him or made various statements to him. These comments might be unprofessional and they might even be penologically ineffective, but they did not violate Mr. Hughes' constitutional rights. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.")

Mr. Hughes alleges that after his arrival at the Miami Correctional Facility at 5:00 p.m. on October 17, 2005, Stacy Hall, Sandy Cellpee, and Julie Adams denied him

requested medicine and did not call a doctor about him until 5:00 a.m. the next morning. He alleges that he had serious medical needs and was in obvious pain. He alleges that Velma Stein, Julie Adams and Sandy Cellpee provided false information to Dr. Myers resulting in his medication and treatment being cancelled. He alleges that they thereafter denied him medical treatment that they knew he needed. Though there may well be valid reasons for the actions taken by these four nurses, giving Mr. Hughes the benefit of the inferences to which he is entitled at the pleading stage of the proceeding, he has stated a claim against Stacy Hall, Sandy Cellpee, Julie Adams, and Velma Stein.

Mr. Hughes names Dr. Myers as a defendant. He states that when he spoke to him on October 24, 2005, Dr. Myers ordered a surgical consult for him, cancelled his discharge, and agreed to speak to the nurses about his medical treatment. He also alleges that he informed Dr. Myers on several other occasions that he was not getting his medical treatment and that Dr. Myers did not succeed in preventing the nurses from interfering with his treatment. These facts do not support an allegation of deliberate indifference. The Eighth Amendment does not require medical success, it merely prohibits wanting harm to come to an inmate. These facts allege that Dr. Myers was provided false information by the nurses and that they refused to follow his orders. He saw and treated Mr. Hughes. Though he is alleged to have been ineffective in getting the nurses to do their jobs, even if his attempts to help were unreasonable and negligent, these facts do not state a claim against Dr. Myers and he will be dismissed.

Mr. Hughes alleges that Health Care Director Chad Barr and Director of Nursing Lynn had actual knowledge that he was denied medical treatment and yet did nothing to help.

> The doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and quotation marks omitted). Though there may well be valid reasons for the actions taken by these two supervisory staff, giving Mr. Hughes the benefit of the inferences to which he is entitled at the pleading stage of the proceeding, he has stated a claim against Health Care Director Chad Barr and Director of Nursing Lynn.

Mr. Huges alleges that he was transferred from the infirmary to segregation by C/O Farensworth and Velma Stien in retaliation for having filed grievances against them. Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir.2000). To state claim for retaliation, the complaint must first allege that the plaintiff was engaged in a Constitutionally protected activity and second, that engaging in that activity was a

substantial or motivating factor in the defendant's actions against him. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977). That is to say, the plaintiff must allege that the retaliatory act would not have occurred "but for" the protected conduct.

"There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

*Dawes v. Walker*, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted), *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982). Though there may well be valid reasons for his transfer, giving Mr. Hughes the benefit of the inferences to which he is entitled at the pleading stage of the proceeding, he has stated a claim against C/O Farensworth and Velma Stien.

Mr. Hughes alleges that C/O Farensworth and Velma Stien ordered him transported in a way that they knew would cause him unnecessary pain and injury. This states a claim against C/O Farensworth and Velma Stien for an excessive use of force.

Mr. Hughes alleges that Sgt. Sweat dragged him several blocks, pulled out his catheter, and left him to lay in his own urine for three days while bleeding and in pain. Though a nurse in the unit wanted to help him, Mr. Hughes alleges that Sgt. Sweat forbade it. This states a claim against Sgt. Sweat for excessive use of force and denial of medial treatment. Mr. Hughes also alleges that other defendants did not send needed medical supplies with him when he was transferred, but since Sgt. Sweat is alleged to have know that he needed medical care and prevented him from receiving any, these do not state a claim because it would have been irrelevant what medical supplies were sent with him.

Mr. Hughes alleges that Correctional Medical Services has a policy which required him to stand outside in the winter without adequate clothing to receive his medication. "As a state . . . grantee, acting for the government in carrying out a government program in accordance with government regulations, [the defendant is] a person 'acting under color of state law.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216, n.13 (10th Cir. 2003). *See also Ancata v. Prison Health Services*, 769 F.2d 700 (11th Cir. 1985) (Corporation acting on behalf of a county is a person.) Though Mr. Hughes also seeks declaratory relief against the Indiana Department of Correction and the Miami County Correctional Facility, he has not alleged, and based on this complaint it would not be reasonable to infer that, this policy was created by other than Correctional Medical Services. So, though there may well be valid reasons for such a policy, if it exists, giving Mr. Hughes the benefit of the inferences to which he is entitled at the pleading stage of

the proceeding, he has stated a claim against only Correctional Medical Services as to this policy.

Mr. Hughes alleges that C/O Farensworth looked at his medical records in violation of his medical privacy rights.

> While only a handful of courts have examined whether a private right of action is implied under the HIPAA, each Court has rejected the position. *See O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176 (D. Wyo. 2001); *Brock v. Provident Am. Ins. Co.*, 144 F. Supp. 2d 652 (N.D. Tex. 2001); *Means v. Indep. Life and Accident Ins. Co.*, 963 F. Supp. 1131 (M.D. Ala. 1997); *Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356 (M.D. Miss. 1997). In fact, the most recent opinion to address this question was written by another member of this court. In *Logan v. VA*, 357 F. Supp. 2d 149 (D.D.C. July 28, 2004), after reviewing the HIPAA provisions governing the disclosure of individually identifiable health information, the court concluded that
>> Congress enacted HIPAA, in part, to address concerns about the confidentiality of health information, particularly in the era of electronic communication. Section 262 of HIPAA (codified as 42 U.S.C. §§ 1320d to d-8) defines terms and imposes requirements on the Department of Health and Human Services ("HHS"), health plans, and healthcare providers involved in the exchange of health information. HIPAA provides for both civil and criminal penalties to be imposed upon individuals who improperly handle or disclose individually identifiable health information. 42 U.S.C. §§ 1320d-5 to d-6. However, the law specifically indicates that the Secretary of HHS shall pursue the action against an alleged offender, not a private individual.
>
> 357 F.Supp.2d 149, 155. In *Logan*, a government employee attempted to bring an action against the government for allegedly disclosing individually identifiable health information. The Logan court concluded that the HIPAA did not provide for a private right of action and it therefore did not have subject matter jurisdiction over the plaintiff's HIPAA claim. Accordingly, the claim was dismissed pursuant to Rule 12(b)(1).

*Johnson v. Quander*, 370 F. Supp. 2d 79, 99-100 (D.D.C. 2005) (online research citations replaced with published volume citations). While it is unclear that a privacy violation occurs when a correctional officer looks at the medical records of an inmate, even if it did, HIPAA does not provide Mr. Hughes with the right to sue for a violation of medical privacy.

For the forgoing reasons, the court:

(1) **GRANTS** Alan Jerome Hughes leave to proceed against Stacy Hall, Sandy Cellpee, Julie Adams, and Velma Stein in their individual capacities for monetary damages for denying him medical treatment in violation of his Eighth Amendment rights;

(2) **GRANTS** Alan Jerome Hughes leave to proceed against Health Care Director Chad Barr and Director of Nursing Lynn in their individual capacities for monetary damages and their official capacities for injunctive relief for denying him medical treatment in violation of his Eighth Amendment rights;

(3) **GRANTS** Alan Jerome Hughes leave to proceed against C/O Farensworth and Velma Stien in their individual capacities for monetary damages for retaliating against him for exercising his First Amendment rights;

(4) **GRANTS** Alan Jerome Hughes leave to proceed against C/O Farensworth and Velma Stien in their individual capacities for monetary damages for ordering that excessive force be used against him in violation of his Eighth Amendment rights;

(5) **GRANTS** Alan Jerome Hughes leave to proceed against Sgt. Sweat in his individual capacity for monetary damages for using excessive force against him in violation of his Eighth Amendment rights;

(6) **GRANTS** Alan Jerome Hughes leave to proceed against Sgt. Sweat in his individual capacity for monetary damages for denying him medical treatment in violation of his Eighth Amendment rights;

(7) **GRANTS** Alan Jerome Hughes leave to proceed against Correctional Medical Services in its individual capacity for monetary damages and in its official capacity for injunctive relief related to its policy requiring him to stand outside in the winter without adequate clothing to receive his medication in violation of his Eighth Amendment rights;

(8) **DISMISSES** all other claims;

(9) **DISMISSES** defendant Dr. Myers;

(10) **DIRECTS** the clerk to transmit the summons and USM-285 for Stacy Hall, Sandy Cellpee, Julie Adams, Velma Stein, Health Care Director Chad Barr, Director of Nursing Lynn, C/O Farensworth, Sgt. Sweat, and Correctional Medical Services to the United States Marshals Service along with a copy of this order and a copy of the amended complaint (docket # 10);

(11) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Stacy Hall, Sandy Cellpee, Julie Adams, Velma

Stein, Health Care Director Chad Barr, Director of Nursing Lynn, C/O Farensworth, Sgt. Sweat, and Correctional Medical Services; and

(12) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Stacy Hall, Sandy Cellpee, Julie Adams, Velma Stein, Health Care Director Chad Barr, Director of Nursing Lynn, C/O Farensworth, Sgt. Sweat, and Correctional Medical Services respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

**ENTER**: June 7, 2006

                                              s/James T. Moody  
                                              JUDGE JAMES T. MOODY  
                                              UNITED STATES DISTRICT COURT